# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 6001 MAY, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-14-482-M |
| ) | |
| STAMATIS ENTERPRISES, INC., et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| STAMATIS ENTERPRISES, INC., et al., ) | |
| ) | |
| Third-Party Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| SAFETY TECH, INC., et al., ) | |
| ) | |
| Third-Party Defendants. ) | |

## ORDER

Before the Court is third-party defendants Cardinal Engineering, Inc. and Steve Mason's (collectively "Cardinal") Daubert Motion to Exclude the Testimony of Third-Party Plaintiffs' Expert Mark P. Hemingway, filed October 12, 2015. On October 26, 2015, third-party plaintiffs filed their response, and on November 2, 2015, Cardinal filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.   Introduction[1]

In 2001, American Cleaners and Laundry, Inc.[2] retained Safety Tech, Inc. ("Safety Tech") to complete a field investigation of the property at issue in this case, 6001-6003 N. May Avenue in Oklahoma City, Oklahoma (the "Site"). The dry cleaning business was scheduled to be sold by Stamatis to PMG One, L.C. ("PMG One"), one of the original plaintiffs in this action. After its initial Phase I investigation, on or about October 23, 2001, Safety Tech noted that there were chemicals in the soil and further testing would be recommended.

PMG One, on learning of the contamination in the soil, insisted that any further work connected with the environmental assessment of the Site be performed by a different consultant, not Safety Tech. PMG One retained Cardinal to perform further investigation of the Site and write a report on the matter. Thereafter, Cardinal oversaw further work performed by Safety Tech and prepared and issued the final report in lieu of Safety Tech doing so. Prior to the consummation of the transaction, Cardinal recommended that, based on its joint investigation with Safety Tech, no further work was needed and the sale could go forward. Stamatis sold the dry cleaning business to PMG One and performed no further environmental investigations and undertook no remediation.

Third-party plaintiffs have now filed suit against Cardinal and allege that Cardinal was professionally negligent in (1) failing to recommend additional sampling and testing, remediation, and reporting; (2) recommending that remediation and reporting was unnecessary, and (3) making this recommendation by incorrectly calculating the reportable quantity of contamination, a method

---

[1]The facts set forth in this Introduction are based upon the Third-Party Complaint.

[2]American Cleaners and Laundry, Inc. was later re-named Stamatis Enterprises, Inc. and is hereafter referred to as "Stamatis".

which third-party plaintiffs allege was not, and is not, a basis in Oklahoma for determining whether remediation or reporting should be recommended. Third-party plaintiffs retained Mark P. Hemingway, a geoscientist and professional environmental consultant, to examine the applicable standard of care and determine if Cardinal breached it. Cardinal now moves the Court to preclude Mr. Hemingway from offering testimony at trial regarding Cardinal's alleged breach of the applicable professional standard of care.

II.     Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony based upon scientific, technical, or other specialized knowledge. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>     (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>     (b) the testimony is based on sufficient facts or data;
>     (c) the testimony is the product of reliable principles and methods; and
>     (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In undertaking its gatekeeping function, a court must first determine under Rule 702 whether the witness is qualified and whether the opinions expressed fall within his area of expertise. *See Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092-93 (W.D. Okla. 2009). "'[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

3

If the court determines the witness is qualified, it must then determine whether the expert's opinions are reliable. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court concluded that "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141. With respect to the all-important reliability determination, the Supreme Court further concluded that "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* (emphasis in original).

The "*Daubert* factors" that *may* be considered in assessing the reliability of proposed expert testimony are: (1) whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error; (4) whether standards control operation of the technique; and (5) whether the theory or technique is generally accepted within the relevant professional community. *Id.* at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). In *Kumho Tire*, the Court recognized that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience," rather than scientific foundations. *Id.* at 150. In such cases, the trial court may focus on alternative factors that

are better-suited to the specific type of expertise at issue. *Id.* at 150-52. "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "[T]he trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

Further, when expert testimony is challenged under *Daubert*, the burden of proof regarding admissibility rests with the party seeking to present the testimony. *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). "The focus [of the inquiry] . . . must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "However, an expert's conclusions are not immune from scrutiny: A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (internal quotations and citation omitted). Additionally, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The Tenth Circuit has explained the appropriate analysis as follows:

> The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.

*Truck Ins. Exch.*, 360 F.3d at 1210 (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

5

Cardinal asserts that Mr. Hemingway's proffered testimony fails to satisfy the prerequisites for the admission of the testimony because (1) Mr. Hemingway lacks specialized knowledge of the Oklahoma Department of Environmental Quality's ("ODEQ") regulation of dry cleaning operations in 2001; (2) Mr. Hemingway lacks sufficient knowledge of the facts of Cardinal's 2001 assignment; (3) Mr. Hemingway cites no standards, methods, or principles applicable to Cardinal's 2001 assignment; and (4) Mr. Hemingway fails to apply any identifiable principles or methods employed by similarly situated professionals to Cardinal's 2001 assignment.

Having carefully reviewed the parties' submissions, the Court finds that based upon his background, knowledge, and experience, Mr. Hemingway is qualified to offer opinions regarding Cardinal's alleged breach of the applicable professional standard of care. Mr. Hemingway is a licensed professional geoscientist in six states, is certified as an environmental scientist by the American Academy of Environmental Engineers and Scientists, has over 29 years of experience in reviewing and supervising environmental investigations and remedial actions relating to groundwater and soil contamination and sites contaminated with PERC, has worked in Oklahoma as an environmental consultant, and has worked with the ODEQ. While Mr. Hemingway may not have first-hand experience involving ODEQ's regulation of dry cleaners prior to 2001, the Court finds Mr. Hemingway's first-hand experience involving ODEQ's regulation of groundwater and soil contamination in general is sufficient to qualify him to offer the opinions at issue. Additionally, the Court finds Mr. Hemingway has set forth a sufficient factual basis for his opinions. Further, the Court finds that Mr. Hemingway's opinions are the product of reliable principles and methods and that Mr. Hemingway reliably applied those principles and methods to the facts of this case. Finally, the Court finds that the majority of the objections Cardinal has to Mr. Hemingway's opinions go to

the weight, and not the admissibility, of these opinions and that during cross-examination, Cardinal may thoroughly question Mr. Hemingway regarding all of the alleged deficiencies in his opinions.

III.     Conclusion

Accordingly, the Court DENIES Cardinal's Daubert Motion to Exclude the Testimony of Third-Party Plaintiffs' Expert Mark P. Hemingway [docket no. 174].

**IT IS SO ORDERED this 5th day of November, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE